E-FILED
Tuesday, 04 August, 2026  01:19:06 PM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>TIDAS THOMPSON,<br>    Defendant. | Case No. 1:21-cr-10037-JEH |

**Order**

Now before the Court are Tidas Thompson's motions for early termination of supervised release.[1] (D. 62, 70). For the reasons stated *infra,* the motions for early termination of supervised release are granted.

**I**

**A**

On September 21, 2021, a federal grand jury returned a three-count indictment charging Thompson with possession with intent to distribute 28 grams or more of cocaine base (Count 1), using and carrying a firearm during and in relation to a drug trafficking crime (Count 2), and being a felon in possession of a firearm (Count 3). On February 9, 2022, he pleaded guilty to all three counts.

On March 13, 2023, the Court sentenced him to 60 months' imprisonment on each of Counts 1 and 3 to run concurrently, 60 months on Count 2 to run consecutively, imposed four years of supervised release on Counts 1 and 2 and three years on Count 3 to run concurrently, and a $300 special assessment.

A number of events occurred which modified Thompson's term of imprisonment, culminating on January 22, 2025, in a Notice of Executive Grant of

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

1

Clemency which resulted in Thompson's release from imprisonment in January 2025. He began to serve his 4-year term of supervision at that time.

On May 21, 2026, Thompson filed a pro se motion for early termination of supervised release, and on May 22, 2026, the Court appointed the Federal Public Defender and directed the filing of an amended motion or status report within 14 days; counsel appeared the same day. On June 5, 2026, Thompson moved for leave to file an amended motion under seal and filed the sealed amended motion with exhibits; on June 8, 2026, the Court ordered the Government to respond by June 22, 2026, and on June 22, 2026, the Government filed its response opposing early termination.

**B**

Thompson's criminal history includes nine prior felony convictions before the instant federal case. In a prior federal case, he was convicted in 2012 of being a felon in possession of a firearm. He previously completed a term of supervised release in that case successfully to the extent that it was terminated early after approximately 13 months in 2017. Unfortunately, he committed the offense for which he is currently serving a supervised release term in 2021. During his imprisonment in this case he completed programming, including a 12-week nonresidential drug abuse program and a year-long carpentry program leading to an NCCER credential, and he finalized his carpentry certification after release.

Since his release from custody in this case, the record reflects positive conduct and rehabilitation. Thompson has served approximately 18 months of his four-year supervised-release term. He has remained compliant with supervision with no violations and no failed drug tests, and monthly drug testing has been discontinued. His supervision is conducted on a courtesy basis by the U.S. Probation Office in the Northern District of Georgia, with reporting limited to monthly online submissions and periodic in-person contacts every two to three months. Since returning to the community he has maintained steady employment, including positions at Pactiv

2

Evergreen and Extreme Kartz, pursued additional training in construction and carpentry, and in April 2026 formed T2 Restoration & Renewals LLC to perform restoration and repair work. He is working toward additional certifications, including mold, fire, and hazardous-materials remediation, and seeks to obtain a Georgia General Contractor license, which he anticipates pursuing after completing his coursework by November 2026. He resides with his family in Georgia, maintains stable housing, engages in church attendance, and provides daily care and support within his household.

C

Thompson seeks early termination after approximately eighteen months of a four-year supervised release term, asserting perfect compliance marked by no violations, no failed drug tests, and a reduced supervision footprint limited to periodic online reporting and infrequent probation visits, with no services being provided. He emphasizes extensive rehabilitative efforts and achievements, including model conduct during incarceration, completion of programming such as the nonresidential drug abuse treatment and a year-long carpentry program culminating in an NCCER credential, continued education post-release, and steady lawful employment that evolved into launching T2 Restoration & Renewals LLC in April 2026, through which he has completed multiple projects while pursuing additional certifications in water mitigation, mold, fire, and hazardous materials.

He represents that early termination would remove a principal barrier to obtaining a Georgia General Contractor license, because the licensing board conducts a background check that requires criminal cases to be closed, which would materially advance his business opportunities, including becoming a vendor for insurance companies. He further cites strong family and community support, active church involvement, and caregiving responsibilities for his special-needs son as evidence of stability, rehabilitation, and the absence of any public-safety risk, and notes that courtesy supervision in the Northern District of Georgia confirms compliance but

cannot take an official position due to a local policy favoring service of three-fourths of the term before early termination.  He points to having successfully completed a prior term of federal supervision with no violations and argues that supervision now imposes unnecessary collateral consequences without rehabilitative benefit, contrary to the goals of supervised release.

The Government opposes early termination, arguing Thompson has served only about 17 months (now 18) of a 48-month term—less than 36%—and that his criminal history, including a prior federal felon-in-possession conviction for which he received early termination after about 13 months of supervision, followed by the instant offense involving carrying a firearm in relation to drug trafficking, demonstrates the need for a longer period of supervision to promote rehabilitation and protect the public. It emphasizes that the underlying conduct involved transporting cocaine by a nine-time convicted felon who possessed a Sig Sauer, and asserts that the pattern reflects escalation from firearm possession to carrying a firearm in furtherance of narcotics trafficking. Invoking the § 3553(a) factors applicable under § 3583(e)(1), it contends that the nature and circumstances of the offense, Thompson's history and characteristics, and the need for deterrence and public protection weigh against termination at this stage, while acknowledging there is no restitution and that his current lack of treatment needs could favor termination. The Government maintains that supervised release provides meaningful deterrence and monitoring through home visits and drug testing, and that granting early termination here would risk creating unwarranted disparities given his prior early termination and subsequent reoffending.

## II

### A

Under 18 U.S.C. § 3583(e)(1), a district court may terminate a term of supervised release after the expiration of one year if, after considering the applicable factors set forth in 18 U.S.C. § 3553(a), it concludes that early termination is warranted

4

by a defendant's conduct and the interests of justice. Among the relevant considerations are the nature and circumstances of the offense, the defendant's history and characteristics, the need to deter criminal conduct, the need to protect the public, the need to provide educational or correctional treatment, the advisory sentencing framework, pertinent policy statements, the avoidance of unwarranted sentencing disparities, and any outstanding restitution obligations. 18 U.S.C. §§ 3553(a), 3583(e)(1).

The decision whether to terminate supervised release rests within the Court's sound discretion. *United States v. Nonahal*, 338 F.3d 668, 671 (7th Cir. 2003). Compliance with supervision conditions alone does not automatically entitle a defendant to early termination, but neither must a defendant demonstrate extraordinary or exceptional circumstances before relief may be granted. *United States v. Crisp*, 770 F. Supp. 3d 1124 (C.D. Ill. 2025). Rather, the Court must evaluate the record as a whole and determine whether continued supervision remains necessary in light of the purposes identified in § 3553(a), excepting subsection (a)(2)(A).

**B**

Considering the factors set forth in 18 U.S.C. § 3553(a) and guided by § 3583(e)(1), the Court first notes that Thompson pleaded guilty to possessing with intent to distribute cocaine base, using and carrying a firearm in relation to a drug trafficking crime, and being a felon in possession. He commenced supervised release in January 2025 and has completed the statutorily required one year of supervision. Indeed, he has served approximately eighteen months of his four-year supervised release term with no violations, no failed drug tests, and is no longer subject to monthly drug testing.

The nature and circumstances of the offense and Thompson's history and characteristics are serious and weigh in part against early termination, as the conduct involved transporting cocaine while armed and occurred against a backdrop that includes prior felony convictions. The Government recounts that Thompson, a

5

multiple-time convicted felon, carried a Sig Sauer while transporting cocaine and a mixture of cocaine from Chicago to Peoria, and it emphasizes his criminal history in opposing early termination. Nonetheless, the record since release shows sustained rehabilitation and stability that materially change the balance of the § 3553(a) considerations.

Thompson has been fully compliant on supervision without incidents; his current supervision consists of monthly online reports and infrequent officer contacts occurring roughly every two to three months, and the Probation Office is not providing services because none are required. The supervising officer in the Northern District of Georgia confirmed compliance and no issues, explaining only that local policy disfavors recommending early termination before three-fourths of the term. The limited, largely administrative nature of his current oversight, juxtaposed with his positive adjustment, indicates that further supervision would add little marginal benefit.

Deterrence and protection of the public now turn principally on Thompson's demonstrated conduct in the community. He maintained clear conduct in BOP, completed programming including a nonresidential drug treatment course, and earned carpentry credentials culminating in possession of an NCCER card. Since release he has maintained steady employment, progressed to self-employment, and in April 2026 launched T2 Restoration & Renewals LLC, through which he has completed projects and continues to expand skills and certifications. These sustained efforts reflect internalized deterrence and pro-social investment that reduce risk and serve the public-safety aims of supervision. The Court acknowledges the Government's concern that a prior early termination in a different case preceded the instant offense; however, the current record shows a different posture, with intensive rehabilitative programming, verified compliance, and structured family and community support anchoring his reentry. The Probation Office's only articulated concern is that this is Thompson's second federal conviction and term of supervision,

6

not that he currently poses a risk or has exhibited any noncompliance.   On balance, the need for deterrence and protection of the public is satisfied by his present stability, treatment history, and verified performance, making continued supervision unnecessary to achieve those goals.

The Court also considers the need to provide training, medical care, or other correctional treatment in the most effective manner. The Probation Office is providing no services because none are needed, and supervision has been reduced to occasional check-ins.   Continued oversight under these circumstances does not facilitate additional treatment or training and therefore does not advance § 3553(a)(2)(D). The Court further weighs the need to avoid unwarranted disparities and to account for the advisory guidelines and pertinent policy statements; here, the individualized assessment under § 3583(e)(1) supports recognizing exceptional post-release progress without creating disparity, as termination is conditioned on sustained compliance and rehabilitation, both of which are present on this record.

Importantly, the record shows that continued supervised release is materially impeding Thompson's ability to expand his legitimate business and obtain licensure that would enhance his earning capacity and stability. He is enrolled in a course to obtain his Georgia General Contractor license, which he intends to secure in November 2026, but the licensing board's background check requires criminal cases to be closed, making him ineligible while on supervised release absent a discretionary exception with tenuous prospects.   This license would expand opportunities considerably, including enabling vendor relationships with insurance companies, and the current supervisory status is the principal barrier.   When weighed against the minimal, largely passive supervision currently occurring, the concrete economic and rehabilitative benefits of licensure and business growth favor termination. Removing that barrier aligns with the rehabilitative purpose of supervised release by facilitating lawful, skill-based work that further reduces recidivism risk.

In sum, the Court recognizes that the seriousness of the offense and criminal history remain relevant to deterrence and protection of the public, and it does not minimize those facts. But at this stage, Thompson's performance, programming, employment trajectory, family and community integration, and the impediments that ongoing supervision imposes on further legitimate advancement collectively demonstrate that the goals of supervised release have been achieved. He has exhibited rehabilitation sufficient to satisfy the need to protect the public, and, given his conduct and the interests of justice, early termination is warranted under § 3583(e)(1).

### III

For the reasons stated *supra*, Thompson's motions for early termination of supervised release are granted. (D. 62, 70).

*It is so ordered.*

Entered on August 4, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE